# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| JAYANT C. BHALERAO, M.D., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 11-CV-7558 |
| | ) | |
| ILLINOIS DEPARTMENT OF FINANCIAL | ) | Judge Robert M. Dow, Jr. |
| AND PROFESSIONAL REGULATIONS, | ) | |
| ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on a motion to dismiss [37] filed by Defendants Illinois Department of Financial and Professional Regulation ("IDFRP") and Jay Stewart, the Director of the IDFRP. For the reasons set forth below, the Court grants Defendants' motion to dismiss [37] and dismisses this case with prejudice.

**I.     Background**

Plaintiff Jayant Bhalerao has been licensed as a physician in Illinois since 1973, specializing in cardiology and internal medicine. For several years, he practiced medicine at a clinic in Orland Park, Illinois, where he saw approximately 10-15 patients per day. In 1999, a patient accused Dr. Bhalerao of inappropriately touching her during an examination, and the Henry County State's Attorney charged him with one count of criminal sexual abuse and one count of misdemeanor battery related to that accusation. Dr. Bhalerao entered a plea of not guilty and testified on his own behalf at trial. On June 27, 2000, a jury acquitted Dr. Bhalerao of the criminal sexual abuse charge, but returned a guilty verdict on the charge of misdemeanor criminal battery. Plaintiff did not appeal the conviction. Dr. Bhalerao has never been convicted

of a sex offense. Following the verdict, Dr. Bhalerao was ordered to pay a fine of $2,500.00. The court did not impose any additional punishment as part of his sentence, such as imprisonment, probation, or community service, nor was Dr. Bhalerao required to register as a sex offender.

On September 19, 2000, the Illinois Department of Financial and Professional Regulation ("IDFPR"), which is charged with issuing, renewing and disciplining professional licenses, including health professionals, filed a disciplinary action against Dr. Bhalerao, charging him with "unprofessional conduct" under the Medical Practice Act. See 225 ILCS 60/22(A)(5). In July 2002, Dr. Bhalerao and the Medical Disciplinary Board entered a Stipulation and Recommendation for Settlement and submitted that recommendation to the Director. On December 30, 2002, the Acting Director of IDFPR entered an order (the "2002 Order") adopting the recommendation, which reprimanded Dr. Bhalerao's license and required him to have a chaperone present whenever he examined a female patient. Dr. Bhalerao has complied with the conditions of the 2002 Order, and his license has remained in good standing and active status since 2002. The reprimand resulting from the 2002 Order is the only discipline on Dr. Bhalerao's record.

Effective August 20, 2011, the Illinois General Assembly added a new section, 20 ILCS 2105/2105-165, to the Civil Administrative Code of Illinois. Section 2105-165 mandates the permanent revocation of the licenses of health care workers in certain circumstances. Section 2105-165 provides in pertinent part:

> (a) *When a licensed health care worker*, as defined in the Health Care Worker Self-Referral Act, (1) has been convicted of a criminal act that requires registration under the Sex Offender Registration Act; (2) *has been convicted of a criminal battery against any patient in the course of patient care or treatment*, including any offense based on sexual conduct or sexual penetration; (3) has been convicted of a forcible felony; or (4) is required as a part of a criminal sentence to

2

> register under the Sex Offender Registration Act, then, notwithstanding any other provision of law to the contrary, *the license of the health care worker shall by operation of law be permanently revoked without a hearing.*

20 ILCS 2105/2105-165 (emphasis added). On October 7, 2011, Dr. Bhalerao received a Notice of Intent to Issue Permanent Revocation Order ("Notice") from the IDFPR, notifying him that his medical license was to be revoked because of a "[c]onviction of a criminal battery against a patient in the course of patient care or treatment." The Notice provided Dr. Bhalerao with the opportunity to challenge the revocation for three reasons: (1) that he was incorrectly identified as the person with the conviction; (2) that the conviction has been vacated, overturned, or reversed, or a pardon has been granted; or (3) the conviction was not a disqualifying conviction. Dr. Bhalerao concedes that none of these defenses apply to him. The Notice indicated that it would become effective 20 days from its date (October 5, 2011) or on October 25, 2011.

Dr. Bhalerao filed his complaint and a motion for temporary restraining order on October 24, 2011. On October 25, 2011, the Court entered a temporary restraining order ("TRO") [11], which expired in the first instance on November 8, 2011. The Court entered an order [21] on November 8 extending the TRO for "good cause" shown until November 22, 2011; the parties then extended the TRO by agreement until November 29, 2011. On November 2, 2011, Dr. Bhalerao filed an amended complaint and motion for preliminary injunction. After briefing and a hearing, the Court denied Plaintiff's motion for a preliminary injunction, concluding that Plaintiff did not have a likelihood of success on the merits of his claims that § 2105-165 violates his constitutional rights for substantive and procedural due process, violates the "Contracts Clause," or violates constitutional prohibitions against *ex post facto* laws and laws that result in double jeopardy. The Court also determined that Plaintiff was not likely to succeed on his state law claims regarding the statute of limitations and *res judicata*.

Following the Court's ruling, Plaintiff retained new counsel, who requested leave to file another complaint. With leave of court, Plaintiff filed his second amended complaint on February 7, 2012. Although Plaintiff's most recent complaint contains many different "headings" or "claims," he advances the same facts and theories. Plaintiff still brings facial and as-applied challenges to the constitutionality of § 2105-165 under the United States Constitution and state law, but Plaintiff has added numerous arguments that § 2105-165 also violates the Illinois Constitution. Plaintiff requests that the Court declare § 2105-165 unconstitutional (both facially and as applied to him) and enjoin the IDFPR from revoking his license (Plaintiff presumably means to request to have his license restored). Defendants have moved to dismiss the lawsuit in its entirety.

## II.     Legal Standard

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the complaint, not the merits of the case. See *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a Rule 12(b)(6) motion to dismiss, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 563. The Court accepts as true all of the

well-pleaded facts alleged by the plaintiff and all reasonable inferences that can be drawn therefrom. See *Barnes v. Briley*, 420 F.3d 673, 677 (7th Cir. 2005).

## III. Analysis[1]

Defendants have moved to dismiss Plaintiff's federal claims and also have requested that, in the event the Court dismisses Plaintiff's federal claims, the Court decline to exercise supplemental jurisdiction over Plaintiff's state law claims. Before turning to Plaintiff's federal claims, one threshold point should be mentioned: In his second amended complaint, Plaintiff purports to bring facial and as-applied federal constitutional challenges to § 2105-165. At the preliminary injunction phase, the Court's denial of Plaintiff's preliminary injunction addressed Plaintiff's as-applied federal constitutional challenges and held that Plaintiff could not succeed on those challenges. Plaintiff's facial constitutional challenge would require Plaintiff to prove that § 2105-165(a) has *no* valid application. See *United States v. Salerno*, 481 U.S. 739 (1987) ("A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid."). However, once the statute is determined to be valid as applied to Plaintiff, a facial challenge must fail. See *People v. Molnar*, 857 N.E.2d 209, 218 (Ill. 2006) ("[B]ecause a finding that a statute is constitutional as applied will necessarily compel a finding that the statute is constitutional on its face, we will first address whether the circuit court correctly found that the [provisions] were unconstitutional as applied to defendant."). Keeping this in mind, the Court turns to the various challenges asserted by Defendants to Plaintiff's second amended complaint.

---

[1] The Court incorporates by reference its 30-page opinion denying Plaintiff's motion for preliminary injunction (see Memorandum Opinion and Order of 11/29/11 ("Opinion")) and will not reiterate the lengthy background law or legal analysis in that opinion unless the law or the parties' arguments have changed in substance since that time.

*1. Substantive due process*

Plaintiff brings substantive due process claims in Count II (claiming that Section 2105-165(a) has been applied retroactively as to him), Count VII (for alleged deprivation of substantive due process), and Count VIII (claiming that statute is being applied retroactively). Plaintiff contends that (i) the statutory language is unclear as to whether pre-existing convictions can lead to license revocation and (ii) that § 2105-165(a) is retroactive because it renders Plaintiff's practice of medicine from 2000 through the enactment of the statute unlawful. Both contentions are contrary to the plain language of the statute and the Court's prior holding. As set forth in detail in the opinion denying Plaintiff's motion for preliminary injunction, the "the General Assembly clearly intended § 2105-165(a) to be used to revoke health care licenses of individuals who had been convicted of certain offenses prior to the effective date of the new statute." Opinion at 7; see also § 2105-165(a) (providing that revocation is required for any licensed worker who "has been convicted" of particular offenses). Also, the plain language of § 2105-165(a) provides that licenses "shall be revoked," indicating that the revocation occurs on or after the effective date of the statute, not as of the date of the conviction. Accordingly, § 2105-165(a)'s mere reliance on antecedent convictions does not render § 2105-165(a) retroactive. Section 2105-165(a) does not penalize Plaintiff for practicing medicine between 2000 and 2011 but instead "looks prospectively at Plaintiff's right to continue practicing medicine in the future." Opinion at 7-8. The Court previously concluded that the statute is not retroactive (Opinion at 9), and nothing in Plaintiff's second amended complaint, recent case law, or the parties' briefs alters this conclusion.

As to Plaintiff's second substantive due process claim, Plaintiff alleges that § 2105-165(a)'s sole purpose was "preventing sex offenders from working in the health care field" and

that because Plaintiff was not convicted of a sex offense, revoking his license is not rationally related to that purpose. The Court previously concluded that § 2105-165(a) is rationally related to a much broader legitimate governmental interest—"regulating the medical profession and protecting the public from health care workers who have been convicted of batteries against their own patients." Opinion at 9-12. Furthermore, it is not Defendants' burden to prove that "the State of Illinios [sic] needs a second statute" relating to physician misconduct. As noted in the denial of Plaintiff's preliminary injunction, Defendants need only suggest a "'conceivable' rational basis for" the statute, which has been provided. Accordingly, Plaintiff's federal substantive due process claims will be dismissed.

### 2. *Procedural due process*

Without specifying any count that seeks to vindicate Plaintiff's procedural due process rights, Plaintiff made reference to procedural due process throughout the SAC. See SAC ¶¶ 3, 60, 62, 64, 186, 187. Plaintiff's primary contention appears to be that Defendants violated his right to procedural due process because they revoked his license without first holding a hearing. The Court already determined that, given his admissions of fact and the underlying criminal proceeding, Plaintiff "has been accorded all of the process that is due." Opinion at 12-15. In his second amended complaint, Plaintiff concedes all facts necessary to determine that § 2105-165 properly applied to him—i.e., that he was a licensed health care worker who has been convicted of a battery against a patient while treating her—and, accordingly, that his license was not revoked in error. Based on the statute as promulgated, no amount of further proceedings could change the mandated result of revocation of Plaintiff's license, given the plain language of § 2105-165(a) and Plaintiff's concessions. Plaintiff's federal procedural due process claim also will be dismissed.

7

### 3. *Double Jeopardy*

Plaintiff claims in Count IV that revocation of his license under § 2105-165(a) for his prior criminal conviction of battery against his patient violates the Constitution's prohibition against double jeopardy. See, *e.g.*, *People v. Levin*, 623 N.E.2d 317, 327-28 (Ill. 1993) (holding that the Double Jeopardy Clause of our state Constitution is to be construed in the same manner as the Double Jeopardy Clause of the federal Constitution); *In re P.S.*, 676 N.E.2d 656, 662 (Ill. 1997) (same). "The Double Jeopardy Clause of the Fifth Amendment protects a criminal defendant from repeated prosecutions for the same offense." *Oregon v. Kennedy*, 456 U.S. 667, 671 (1982). "The protection against multiple punishments prohibits the Government from punishing twice, or attempting a second time to punish criminally for the same offense." *United States v. Ursery*, 518 U.S. 267, 273 (1996). To determine whether a license revocation is punishment for purposes of the double jeopardy clause, courts first consider whether the General Assembly intended the proceedings to be civil. See *Cox v. Commodity Futures Trading Comm'n.*, 138 F.3d 268, 272 (7th Cir. 1998) ("The first step in our analysis is to determine whether the legislature in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other") (quotations omitted). If so, courts assess whether the proceedings are nevertheless so punitive that the proceedings may not be legitimately viewed as civil in nature despite the General Assembly's intent. *Id.* ("Turning to the second stage of analysis, we must determine whether, notwithstanding this legislative preference, the sanction operates in such a way as to transform it into a criminal penalty.").

The Double Jeopardy Clause protects against multiple criminal or punitive effects upon a person for the same offense. See Opinion at 15. The Court reiterates its prior holding that § 2105-165(a)'s legislative purpose and effect are civil, not punitive. *Id.* at 15-22. Therefore, §

2105-165 does not result in double jeopardy as to Plaintiff, and Plaintiff's federal double jeopardy claim will be dismissed.

        *4.*      *Ex Post Facto Clause*

In Count III, Plaintiff maintains that § 2105-165(a) is an unconstitutional *ex post facto* law because it inflicts a penalty on Plaintiff by revoking his license for "a crime committed before the enactment of the law." SAC at ¶ 94. The *Ex Post Facto* Clause prohibits retroactive punishment. U.S. CONST. art. I, § 9, cl. 3. The Supreme Court has held that "the constitutional prohibition on *ex post facto* laws applies only to penal statutes which disadvantage the offender affected by them." *Collins v. Youngblood,* 497 U.S. 37, 41 (1990); see also *O'Grady v. Village of Libertyville,* 304 F.3d 719, 723 (7th Cir. 2002). In other words, the Clause "is aimed at laws that retroactively alter the definition of crimes or increase the punishment for criminal acts." *California Dept. of Corrections v. Morales*, 514 U.S. 499, 505 (1995) (citations and quotations omitted). "[T]wo critical elements must be present for a criminal or penal law to be *ex post facto*: it must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it." *Weaver v. Graham*, 450 U.S. 24, 29 (1981). The *ex post facto* clause applies only to criminal laws. *Harisiades v. Shaughnessy*, 342 U.S. 580, 594 (1952) ("It always has been considered that that which it forbids is penal legislation which imposes or increases criminal punishment for conduct lawful previous to its enactment."); *O'Grady*, 304 F.3d at 723. The Seventh Circuit has emphasized the restriction to penal statutes and thus a civil statute "will implicate ex post facto concerns only if it can be fairly characterized as punishment." *U.S. v. Leach*, 639 F.3d 769, 772 (7th Cir. 2011) (quoting *Bae v. Shalala*, 44 F.3d 489, 492 (7th Cir. 1995)).

9

As discussed in the Court's prior opinion denying Plaintiff's motion for a preliminary injunction, § 2105-165(a) is not retroactive because it targets conduct (holding a license and practicing medicine) undertaken after its enactment. See also *Leach*, 639 F.3d at 773 ("SORNA merely creates new, prospective legal obligations based on the person's prior history"). It does not penalize Dr. Bhalerao for the past ten years; rather, it bars him going forward. Furthermore, for § 2105-165(a) to violate the *Ex Post Facto* Clause, it must be both retrospective and penal. *Id.* Yet it is not a law that falls into one of the traditional categories of prohibited criminal laws. The clear intent of § 2105-165(a), whether it achieves that intent or not, is to protect the public health, safety, and welfare. See, *e.g., Smith v. Doe*, 538 U.S. 84 (2003) (finding the Alaska Sex Offender Registration Act is designed to protect the public and is non-punitive in nature); *Hawker*, 170 U.S. 189 (holding that criminal conviction can be used by State as evidence of a lack of good character and basis to revoke medical license, and law regarding same is not *ex post facto*).

The Court already analyzed the seven factors necessary to determine whether a statute's effects are punitive or civil and determined that most of the factors pointed in the direction of finding § 2105-165 to be a civil statute, not a punitive one. See Opinion at 16-22. Plaintiff now argues that § 2105-165 is nevertheless punitive not because any particular factor was weighed incorrectly but because, in other cases, certain "fees" imposed during the sentencing of a criminal defendant have been found to be "fines" or "pecuniary punishment[s] imposed as part of a sentence." See Pl.'s Resp. at 5. However, § 2105-165 neither imposed license revocation as part of a criminal sentence nor ordered Plaintiff to pay any amount to the State, any fund, or any person. Accordingly, cases involving "fines" are inapposite. In any event, imposing this type of discipline upon professional licensees is traditionally a civil rather than punitive measure. See

Opinion at 22; see also *Dittman v. State of Cal.*, 191 F.3d 1020, 1030-31 (9th Cir. 1999); *Abramson v. Gonzalez*, 949 F.2d 1567, 1580-81 (11th Cir. 1992) (upholding statute requiring professionals to have state license before holding selves out as psychologists); *Wineblad v. Dep't of Educ. & Regis*, 161 Ill. App. 3d 827, 831-32 (1st Dist. 1987) (holding that applying new statutory licensing requirement of taking certifying exam to previously licensed nurses was not an improper retroactive application of statute) (citing *Rios v. Jones,* 63 Ill.2d 488 (1976); *Brown v. McGarr*, 774 F.2d 777 (7th Cir. 1985). Count III will be dismissed.

        5.    *The Contracts Clause*

Plaintiff next contends that he has stated a Contracts Clause claim because (1) he entered a contract, (2) the purported contract obligates the Department not to enforce the newly-enacted Statute; and (3) any such agreement by the IDFPR would be enforceable. The Contracts Clause provides that "No State shall * * * pass any * * * Law impairing the Obligations of Contracts." U.S. Const. Art. I, § 10. First, it is debatable whether the 2002 Order meets the required elements of a contract under Illinois law. Although Plaintiff and the Disciplinary Board had previously entered a stipulation recommending settlement to the IDFPR's Director, it was not binding on the IDFPR. The Director issued the 2002 Order, and Plaintiff, who did not sign the order, was not a party to that order but was required to follow its dictates. Additionally, even if the stipulation upon which Plaintiff relies constitutes a contract as Plaintiff claims, Plaintiff does not point to any language purporting to promise Plaintiff that his conviction never could be the basis for revocation of his license; indeed, no such language appears. Accordingly, as a matter of law, Plaintiff cannot state a claim that § 2105-165 impairs any obligation of the stipulation, much less that it impairs an enforceable obligation.

Furthermore, even if Plaintiff had a contract containing a promise by the IDFRP never to revoke his license even under new statutes—and he does not—§ 2105-165 does not run afoul of the Contracts Clause because, as the Court already determined, it is a valid use of the state's police power to protect the public. See Opinion at 24-25. The Contracts Clause notwithstanding, contractual rights remain subject to the police power of the state. See *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 503 (1987) ("It is to be accepted as a commonplace that the Contracts Clause does not operate to obliterate the police power of the States") (quoting *Home Building & Loan Ass'n v. Blaisdell*, 290 U.S. 398, 445 (1934)); *Lincoln Towers Insurance Agency, Inc. v. Boozell,* 684 N.E.2d 900, 903-04 (1997); see also *Commonwealth Edison Co. v. Illinois Commerce Com'n*, 924 N.E.2d 1065, 1086-88 (Ill. App. Ct. 2d Dist. 2009). The state always retains the authority to safeguard the interests of its citizens. *Sanelli v. Glenview State Bank,* 483 N.E.2d 226 (1985). Put differently, "[o]ne whose rights, such as they are, are subject to state restriction, cannot remove them from the power of the State by making a contract about them. The contract will carry with it the infirmity of the subject matter." *Hudson County Water Co. v. McCarter,* 209 U.S. 349, 357 (1908).

Here, the legislature enacted § 2105-165 for the purpose of protecting the public from health care professionals, who, like Plaintiff, have been convicted of batteries against their patients and certain other crimes. The legislature determined that the discretionary provisions of the Medical Practice Act were insufficient to serve the public and that mandatory revocation was required for health care professionals convicted of those crimes listed in § 2105-165(a). Accordingly, the legislature exercised its police power to protect the public. On these facts and in light of the cases discussed above, Plaintiff cannot demonstrate that the Court should

substitute its judgment for the Illinois General Assembly, and his Contracts Clause claim therefore fails.

      *7.     Vested rights*

Plaintiff asserts that he has a "vested right" in his medical license. Although it is unclear which federal claim from his second amended complaint Plaintiff intends this argument to support—indeed, his argument likely is tied to his substantive due process claim, which was previously addressed by the Court—the Court briefly addresses Plaintiff's theory as gleaned from his response brief. To the extent that a "vested right" might impact Plaintiff's federal claims, Plaintiff had no vested right in his medical license under Illinois law. Although professional licenses may be property rights (see *Smith v. Dep't of Registration*, 412 Ill. 332, 340-41 (1952)), they are not "vested rights." Professional licenses have always been subject to regulation, and the state may change requirements for issuing or retaining professional licenses, particularly where it legislates in furtherance of its interest in protecting the public health and safety. See Opinion at 9-10; see, *e.g., Wineblad v. Dep't of Educ. & Regis*, 515 N.E.2d 705, 709 (Ill. App. Ct. 1st Dist. 1987) (holding that applying a new statutory licensing requirement of taking a certifying exam to previously licensed nurses was not an improper retroactive application of the statute) (citing *Rios v. Jones,* 63 Ill.2d 488 (1976); *Brown v. McGarr*, 774 F.2d 777 (7th Cir. 1985)). Accordingly, courts have repeatedly upheld statutes that withhold or revoke occupational licenses for failure to meet or comply with conditions imposed by the state for societal protection. See Opinion at 9-10.

The Supreme Court also has held that states may require good character as a qualification for a medical license and that a criminal conviction is relevant and may be used to determine character. See *Hawker v. N.Y.*, 170 U.S. 189, 194-95 (1898) (stating that "[c]haracter is as

important a qualification as knowledge," and that "[i]t is not open to doubt that the commission of a crime * * * has some relation to the question of character."); Opinion at 14. Here, Plaintiff's license was revoked under § 2105-165 due to a criminal conviction related to his medical practice—battery of a patient during the course of care or treatment.[2] It is "not open to doubt" that this type of conviction is a factor that the legislature legitimately could use to determine whether licensees have the requisite character to practice medicine in this state. See *U.S. v. Brown*, 381 U.S. 437, 468 (1965) (quoting *Hawker*, 170 U.S. at 196). Moreover, the Illinois Supreme Court has noted that the General Assembly not only has the right, but also the "duty to require that medical license applicants possess good moral character." *Abrahamson v. Ill. Dept. of Prof. Reg.*, 606 N.E.2d 1111, 1118 (Ill. 1992). The legislature's interest in regulating the medical profession and protecting the public from health care workers who have been convicted of batteries against their own patients is rationally related to § 2105-165(a)'s license revocation for convicted professionals. The best that can be said for Plaintiff's position is that application of the statute in the particular (and in all likelihood atypical) circumstances of this case leads to a harsh result. But the General Assembly has now made mandatory what previously was discretionary, stripping away from its creation (the IDFPR) the authority to treat misdemeanants like Dr. Bhalerao more leniently than others who fall within the ambit of § 2105-165. In so doing, the General Assembly has drawn a bright line.

The General Assembly is the primary expositor of Illinois public policy and is given wide latitude in making classifications and drawing lines, especially in the exercise of its prerogatives concerning public health, safety, and welfare. See, *e.g.*, *Mathews v. Diaz*, 426 U.S. 67, 83 (1976) (noting that "it remains true that some line is essential [and] that any line must produce some

---

[2] The Court previously held that, "taking into account all of the factors that inform the due process analysis, * * * Plaintiff has been accorded all of the process that is due" to protect his interests. See Opinion at 14.

harsh and apparently arbitrary consequences * * * * When this kind of policy choice must be made, we are especially reluctant to question the exercise of congressional judgment."); *City of Chicago v. Shalala*, 1998 WL 164889, at *12 (N.D. Ill. Mar. 31, 1998) ("Congressional line drawing necessarily implies that people with differing circumstances will be placed on either side of the line. This court is not empowered to second-guess Congress' decision as to where to place that line") (internal citations omitted). Put another way, the Court—indeed, any court—may not second-guess the legislature's judgment so long as it has a rational basis. Here, the statutory language itself directly links revocation of the medical license with some kind of criminal misfeasance during the course of patient care or treatment. At the level of generality at which it is written, the rational basis for the statute is self evident from its plain text. And the fact that the statute covers tough cases that lie at the margins of its reach—like this one—does not alter the rational basis inquiry. It was a legislative determination, not an agency decision, which led to Plaintiff's inability to continue to practice medicine based upon a much earlier conviction, and the legislative decision did not impact a vested right of Plaintiff's. Plaintiff had no vested right in his medical license and states no federal claim on this basis.

### 8. *Plaintiff's state law claims and the Eleventh Amendment*

Plaintiff's second amended complaint also raises numerous state law claims against Defendants. In their motion, Defendants contend that the Eleventh Amendment immunizes the states, as well as their agencies and officers, from suit in federal court, regardless of the relief sought. *Pennhurst Sch. & Hosp. v. Halderman*, 465 U.S. 89, 97-102 (1984); *MCI Telecomm. Corp. v. Ill. Bell Tel. Co.*, 222 F.3d 323, 336 (7th Cir. 2000) ("The immunity conferred on a state by the Eleventh Amendment extends to state agencies as well."). In his response brief, Plaintiff

did not address Defendants' argument that the Eleventh Amendment bars all of his state law claims.

Although there is a narrow exception for federal claims seeking prospective injunctive relief against state officers (see *Ex Parte Young*, 209 U.S. 123 (1908)), it does not apply to state law claims brought in federal court. *Pennhurst*, 465 U.S. at 106 ("[I]t is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law."). The Seventh Circuit and Northern District of Illinois have consistently found state agencies and their officers immune from state law claims—including state constitutional claims—in federal court. See, *e.g.*, *David B. v. McDonald*, 156 F.3d 780, 784 (7th Cir. 1998); *Wright-Gray v. Ill. Dept. Healthcare & Family Serv.*, 2010 WL 381115, at *5 (N.D. Ill. Jan. 26, 2010); *Ill. Clean Energy Cmty. Found. v. Filan*, 2004 WL 1093711, at *3 (N.D. Ill. Apr. 30, 2004); *Bricklayers Union Local 21 v. Edgar*, 922 F. Supp. 100, 109 (N.D. Ill. 1996). Whether viewed as a jurisdictional bar or an immunity from suit (see *Pennhurst*, 465 U.S. at 98 ("[F]ederal jurisdiction over suits against unconsenting states 'was not contemplated by the Constitution when establishing the judicial power of the United States.'"); *Kennedy v. Nat'l Juvenile Det. Ass'n*, 187 F.3d 690, 696 (7th Cir. 1999) (discussing Eleventh Amendment as immunity)), the Eleventh Amendment bars Plaintiff's claims from litigation in federal court. Accordingly, Plaintiff's state law claims against IDFPR and Jay Stewart, a state officer, are barred.[3]

---

[3] Furthermore, Plaintiff cannot circumvent Eleventh Amendment sovereign immunity by invoking supplemental jurisdiction. *Pennhurst*, 465 U.S. at 121. And, in any event, supplemental jurisdiction over Plaintiff's state constitutional and statutory claims is inappropriate here. See *Williams v. Rodriguez*, 509 F.3d 392, 404 (7th Cir. 2007) (noting that where all federal claims are dismissed, "as a general matter," "the federal court should relinquish jurisdiction over the remaining pendant state claims."). Even if the Eleventh Amendment did not bar Plaintiff's state law claims, the Court would decline to exercise supplemental jurisdiction over them because this opinion disposes of all of Plaintiff's federal claims.

**IV.     Conclusion**

For these reasons set forth above, the Court concludes that Plaintiff has failed to state a claim upon which relief can be granted.  Therefore, the Court grants Defendants' motion to dismiss [37] and dismisses this case with prejudice.

Dated:  November 15, 2012    _____
                                                            Robert M. Dow, Jr.
                                                            United States District Judge